901 F.2d 571
 PEABODY COAL COMPANY and Old Republic Insurance Company, Petitioners,
v.
Earl V. HELMS and Director, Office of Workers' Compensation
Programs, United States Department of Labor, Respondents.
 No. 88-2882.
 United States Court of Appeals,
Seventh Circuit.
 Argued Dec. 4, 1989.
Decided April 19, 1990.
 
 W.C. Blanton, Ice, Miller, Donadio & Ryan, Indianapolis, Ind., for petitioners.
 Jack N. VanStone, VanStone & Associates, Evansville, Ind., Roscoe C. Bryant, III, Office of the Sol., Rae Ellen Frank James, Sylvia T. Kaser, Dept. of Labor, Black Lung Div., Washington, D.C., for respondents.
 Before POSNER and FLAUM, Circuit Judges, and DUMBAULD, Senior District Judge.*
 POSNER, Circuit Judge.
 
 
 1
 This is a petition by a coal company to review an award of black lung benefits to one of its employees, Earl Helms. 33 U.S.C. Sec. 932(a). The company concedes that there was enough evidence of black lung disease to satisfy the presumption of total disability in 20 C.F.R. Sec. 727.203(a), on which see Cook v. Director, 816 F.2d 1182 (7th Cir.1987), but argues that it rebutted the presumption, as the regulations allow it to do, by showing that Helms was not in fact totally disabled from performing his usual coal mine work. 20 C.F.R. Secs. 727.203(b)(2), (3).
 
 
 2
 Helms was a fireman in the tipple, which means that he did not work in the mine itself but instead worked above ground in a shack controlling the supply of water to the mine. His main task was adjusting valves several times a day; to do this he had to walk down a flight of stairs, and up again after making the adjustments. In slack periods he would sometimes help with repairs, and this might require him to carry a fifty pound chain saw or wield a sledgehammer (briefly). The parties disagree about the precise scope and strenuousness of Helms's duties; the agency did not attempt to resolve the disagreement.
 
 
 3
 The medical evidence is voluminous. It shows that Helms has a history of respiratory problems--including bronchitis, pneumonia, and asthma. This history is not surprising; Helms has been working in or around coal mines for thirty years and has been smoking a pack of cigarettes a day throughout that period, and besides has hay fever and other allergies that affect breathing. X-rays and other objective medical data show changes in his lungs that are consistent with black lung disease and it is on the basis of these data that the presumption we mentioned (the "interim presumption," as it is called) was invoked.
 
 
 4
 The issue is whether the company succeeded in rebutting the presumption by proving that Helms's breathing difficulties are not so severe that he can be said to be totally disabled, which for purposes of the case means unable to work as a fireman in a tipple. The company put in evidence by two pulmonary specialists, Drs. Houser and Tuteur--the first being Helms's own pulmonary expert. Helms responded with a letter from a Dr. Mooney, who had been treating him for the previous nine months. The administrative law judge, seconded in these rulings by the Benefits Review Board, rejected Dr. Houser's evidence on the ground that his report contradicted his deposition; gave relatively little weight to Dr. Tuteur's report because Tuteur had not examined Helms; and gave Dr. Mooney's letter "the most weight," because Mooney was the examining physician.
 
 
 5
 The rejection of Dr. Houser's evidence mystifies us, and not only or primarily because he had been retained by the claimant. The administrative law judge did not specify the contradiction between Houser's report and his deposition, and having read both documents we cannot find any contradiction between them. It is an apparent, not a real, contradiction that Houser said in his report that Helms was disabled within the meaning of 20 C.F.R. Sec. 727.203(a)(2) and in his deposition that Helms was able to perform the duties of his job. The regulation establishes merely a presumption of disability; Houser must have thought the presumption rebutted.
 
 
 6
 The administrative law judge's treatment of the Tuteur and Mooney evidence was also unsatisfactory. A blanket rule that the opinion of the treating physician is entitled to greater weight than that of a consulting physician is arbitrary. Stephens v. Heckler, 766 F.2d 284, 288-89 (7th Cir.1985); Garrison v. Heckler, 765 F.2d 710, 713 (7th Cir.1985). If the treating physician is not a specialist in black lung disease but the consultant is, and if a judgment of disability depends to a great extent on the expert interpretation of documentary data, such as X-rays and the results of gas and ventilatory tests, then reason may require that the consultant's opinion be given equal or even greater weight than the treating physician's. Cf. Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Administrative agencies are not free to disregard reason.
 
 
 7
 Dr. Tuteur is a medical-school professor who specializes in pulmonary disease. He wrote a long and well-reasoned report on Helms, reviewing the large number of X-rays and test results that Helms has accumulated over the years. His conclusion was that Helms has a mild, nondisabling, unspecific "airways" impairment, conceivably black lung disease, besides his occasional bouts of asthma, bronchitis, and pneumonia. Against this is a one and a half page double-spaced letter from Dr. James S. Mooney, M.D., of Boonville, Indiana to Helms's lawyer. Dr. Mooney's curriculum vitae was not placed in the record and he was not deposed; as a result, there is nothing in the record about the nature of his medical practice except that the company describes him in its brief, without contradiction, as a general practitioner. At the time the letter was written, Dr. Mooney had been treating Helms for nine months, "for several bouts of bronchitis, for Chronic Obstructive Pulmonary Disease, and for one episode of pneumonia." The letter notes that antibiotics, bronchodilators, antihistamines, and allergy-desensitization injections had been prescribed and that "Helms worked over 30 years in underground and strip mines, and reports much exposure to coal dust. He also has a history of cigarette smoking for many years, and a history of environmental allergy." "Physical findings," the letter continues, "include decreased breath sounds, prolonged expiration, fine scattered dry rales, and expiratory and inspiratory wheezing." The letter then remarks that two X-rays (probably submitted to him by Helms's counsel) had been read as positive for black lung disease and that Dr. Houser's tests "showed mild obstructive ventilatory impairment."
 
 
 8
 All this is prelude to the letter's climax in the next and last paragraph, which reads in its entirety: "I believe Mr. Helms is totally disabled as a coal-worker, due in part to coal-workers pneumoconiosis [black lung disease], from exposure to coal dust and in part due to Cigarette Smoke Exposure, and possibly to environmental allergies as well. This total disability prevents him from working around coal dust."
 
 
 9
 The letter is hopelessly ambiguous. Until the last paragraph there is no indication of severity, and indeed the noncommittal report of Dr. Houser's findings suggests that Helms's problems are not severe (mild obstructive ventilatory impairment). The last paragraph is conclusional, and is the sort of thing that treating physicians frequently write as an accommodation to their patients. DeFrancesco v. Bowen, 867 F.2d 1040, 1043 (7th Cir.1989); Cummins v. Schweiker, 670 F.2d 81, 84 (7th Cir.1982); Stephens v. Heckler, supra, 766 F.2d at 289. It is also ambiguous. There is no indication that Dr. Mooney was ever informed of the exact nature of Helms's work, and the thrust of the last paragraph appears to be that Helms should not work in a dusty environment, not that he should not work as a fireman in a tipple, opening and closing valves. If the last sentence is taken as explanatory of the conclusion that Helms is totally disabled, all he is disabled from, in Dr. Mooney's opinion, is "working around coal dust"--which is not what working in a tipple is around. So even if all the weight in the world is given to Dr. Mooney's letter, and it should not be, the letter would not refute Dr. Tuteur's conclusion from an examination of the full range of objective tests of Helms's lungs.
 
 
 10
 Unless we are to be a pure rubber stamp of the agency--which of course is the temptation in disability cases--we cannot deem the award of benefits in this case supported by substantial evidence on the record as a whole. The stated reason for giving no weight to Dr. Houser's testimony has no support in the record. Dr. Mooney's letter, on which the agency placed such heavy weight, is neither weighty nor inconsistent with Houser's and Tuteur's evaluations. If the agency has a good reason for rejecting those evaluations, it has yet to articulate it. So far as we can tell, the agency based its decision on a mechanical preference for the opinion of a treating physician over that of a consulting physician, regardless of circumstances; and it may well have misconstrued the treating physician's opinion, into the bargain.
 
 
 11
 The finding that Helms is totally disabled must therefore be vacated and the matter returned to the agency for further proceedings. But we reject the company's argument that Helms is disentitled to benefits as a matter of law. There is no legal impediment to benefits in this case; it is simply that the agency's decision fails to demonstrate that the award of benefits is supported by substantial evidence on the record as a whole. Perhaps on remand the agency can demonstrate that its decision really is supported by substantial evidence. Zeigler Coal Co. v. Sieberg, 839 F.2d 1280, 1284 (7th Cir.1988).
 
 
 12
 REVERSED AND REMANDED.
 
 
 13
 DUMBAULD, Senior District Judge, concurring.
 
 
 14
 I would have been content to leave to the agency the evaluation of the weight of the evidence. However, I join in the Court's judgment since it simply remands the case for further proceedings and does not preclude the agency from demonstrating more clearly on remand that its decision (awarding black lung benefits to a claimant working on the tipple of the coal mine rather than underground but obviously afflicted with some degree of obstructive ventilatory impairment) "really is supported by substantial evidence."
 
 
 
 *
 Hon. Edward Dumbauld, of the Western District of Pennsylvania, sitting by designation